**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DOMINICK OCCHIATO,

    Plaintiff,

        v.

EXETER TOWNSHIP and JOHN
HINKLE,

    Defendants.

CIVIL ACTION NO. 3:04-CV-0499

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court is Defendants' Motion For Summary Judgment (Doc. 21). For the reasons set forth below, the Court will grant Defendants' motion in part and deny it in part. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

**BACKGROUND**

Plaintiff was stopped by Defendant John Hinkle on State Route 92 in Wyoming County Pennsylvania, on April 27, 2002. (Doc. 32-2, Ex. 1 ¶¶ 7-10.) At the time, Defendant Hinkle was the Chief for Exeter Township Police Department. (Doc. 24-4, tab 3 at 4.) Defendant Hinkle submitted evidence that he had observed Plaintiff speeding, crossing over the double yellow line twice and crossing the white fog line once. *Id.* Plaintiff admits that he was speeding, but denies having driven across either the yellow or white lines. (Doc. 32-2, Ex. 1 ¶¶ 7-8.)

While speaking with Plaintiff about his license and registration, Defendants submitted evidence that Defendant Hinkle observed a strong odor of alcohol coming from

the vehicle.  (Doc. 23 ¶ 6; Doc. 24-3, tab 2 at 22.)  Defendant Hinkle then asked Plaintiff

to submit to a field sobriety test, and Plaintiff agreed.  (Doc. 24-3, tab 2 at 26-27; Doc. 24-

4, tab 3 at 5.)  Plaintiff subsequently failed the test.  (Doc. 24-4, tab 3 at 8.)  Plaintiff was

then arrested on suspicion of driving under the influence, he did not attempt to resist

arrest or flee, and Defendant Hinkle initially handcuffed Plaintiff's hands behind his back

prior to transporting Plaintiff to Tyler Memorial Hospital for blood testing, to which Plaintiff

had consented.  (Doc. 24-4, tab 3 at 8, Doc. 24-3, tab 2 at 7, 47.)

Plaintiff submitted evidence that while in transport to the hospital he complained to

Defendant Hinkle numerous times that the handcuffs were hurting him, and requested

the handcuffs be loosened.  (Doc. 24-3, tab 3 at 50.)  Plaintiff also submitted evidence

that he began to cry from the pain caused by the handcuffs.  (Doc. 32-2, Ex. 1 ¶ 19.)

Furthermore, Plaintiff submitted evidence that despite his requests and crying, Defendant

Hinkle did not check or loosen the handcuffs until Plaintiff was in the examination room at

Tyler Memorial Hospital.  (Doc. 24-3, tab 3 at 53.)  Defendants submitted evidence that

Plaintiff had actually began to cry when Plaintiff was advised he was under arrest.  (Doc.

24-3, tab 2 at 41.)

According to Plaintiff, upon removal of the handcuffs at the hospital, his wrists

were bleeding and had abrasions.  (Doc. 24-2, tab 1 at 53.)  Defendants, however,

submitted evidence that Plaintiff's wrists were red where the handcuffs had been, but

were not bleeding or showing signs of injury.  (Doc. 23 ¶ 14.)  Plaintiff submitted evidence

that Defendant Hinkle observed the injuries to Plaintiff's wrists and, following completion

of the blood test, proceeded to reapply the handcuffs as tightly as before.  (Doc. 32-2, Ex.

1 ¶¶ 23-24.)  Plaintiff further submitted evidence that his hands were, again, handcuffed

2

behind his back.  *Id.*  Defendant submitted evidence that Plaintiff's hands were handcuffed in front of his body following completion of the blood tests.  (Doc. 24-3, tab 2 at 55.)  Defendants also submitted evidence that Plaintiff's blood alcohol content tested at .149 and was thus over the legal limit.  (Doc. 24-7, tab 6.)

Plaintiff next submitted evidence that outside of the hospital, Defendant Hinkle tried to shove Plaintiff into the police cruiser in order to transport Plaintiff to Plaintiff's home. (Doc. 24-2, tab 1 at 67.)  Plaintiff further submitted evidence that due to the shove, he fell onto his back with the handcuffs on and sustained an injury to his lower back.  *Id.* Defendants submitted evidence that Plaintiff was not shoved and did not fall.  (Doc. 24-3, tab 2 at 56.)  Plaintiff also submitted evidence that Defendant Hinkle refused to allow him to use a restroom, which forced Plaintiff to urinate on himself in the back of the cruiser. (Doc. 24-2, tab 1 at 58-59.)  Defendants submitted evidence that Plaintiff was allowed to use the restroom at the hospital, and that Plaintiff never urinated in the police cruiser. (Doc. 24-3, tab 2 at 55-57.)

The following day, on April 28, 2002, Plaintiff returned to the Tyler Memorial Hospital complaining about bilateral wrist pain with numbness of the right thumb and index finger.  (Doc. 32-3 at 1.)  Plaintiff then submitted evidence that he has received ongoing treatment for injuries to his wrists and lower back following his arrest, including EMG nerve conduction, three nerve blocks, and imaging at the Wilkes Barre Imaging Center.  (Doc. 32-3 at 2.)  Finally, Plaintiff submitted evidence from an expert stating that Plaintiff's  "current symptoms of numbness in his right thumb and index finger are secondary to the handcuff application," and "that his current low back pain is also secondary to the injury he sustained when falling to the ground."  (Doc. 32-3 at 3.)

3

On March 8, 2004, Plaintiff filed the present suit.  Defendants moved for summary judgment on March 31, 2005.  The motion is fully briefed and the matter is ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

4

323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### 1.    Qualified Immunity - Section 1983 Claim

Defendants move for summary judgment as to Defendant Hinkle's entitlement to qualified immunity from Plaintiff's section 1983 claim. For the reasons set forth below, I find that: (1) material issues of fact exist as to whether Defendant Hinkle violated Plaintiff's constitutional right to be free from unreasonable seizure; and (2) Defendant Hinkle would not be entitled to qualified immunity if found to have violated Plaintiff's constitutional right, as the right in question was clearly established. Therefore, Defendants' motion will be denied with regard to this claim.

42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage . . . subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

The doctrine of qualified immunity provides "government officials performing discretionary functions . . . [a shield] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant has the burden to establish that he is entitled to qualified immunity. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001). To determine whether a particular defendant is entitled to the protections of qualified immunity, the Court must first determine whether a constitutional violation has occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Then, the Court must determine if the constitutional right at issue was clearly established at the time of the alleged violation. *Id.* Qualified immunity is an objective question to be decided by the Court as a matter of law. *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004).

### a.    Excessive Force

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Estate of Smith*, 318 F.3d 497, 515 (3d Cir. 2003) (quoting *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999)). In the present case, there is no dispute that Plaintiff's arrest constituted a seizure. The only question at issue is whether the force used by Defendant

Hinkle to effectuate the arrest was reasonable.  Specifically, Plaintiff argues that Defendant Hinkle employed excessive force in the course of handcuffing Plaintiff.

The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight.  *See Graham*, 490 U.S. at 396.  A court in making a reasonableness assessment also may consider the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.  *See Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).  The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).

"Reasonableness" under the Fourth Amendment should frequently remain a question for the jury," *Abraham*, 183 F.3d at 290; however, "'defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the

circumstances.'" *Id.* (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)); *see also Estate of Smith*, 318 F.3d at 516.

In the present case, it is undisputed that Plaintiff was arrested on suspicion of driving under the influence, he did not attempt to resist arrest or flee, and Defendant Hinkle initially handcuffed Plaintiff's hands behind his back prior to transporting Plaintiff to Tyler Memorial Hospital for blood testing.  In addition, Plaintiff submitted evidence that while in transport to the hospital he complained to Defendant Hinkle numerous times that the handcuffs were hurting him, and requested the handcuffs be loosened.  (Doc. 24-3, tab 3 at 50.)  Plaintiff also submitted evidence that he began to cry from the pain caused by the handcuffs.  (Doc. 32-2, Ex. 1 ¶ 19.)  Furthermore, Plaintiff submitted evidence that despite his requests and crying, Defendant Hinkle did not check or loosen the handcuffs until Plaintiff was in the examination room at Tyler Memorial Hospital.  (Doc. 24-3, tab 3 at 53.)  According to Plaintiff's evidence, upon removal of the handcuffs, his wrists were bleeding and had abrasions.  (Doc. 24-2, tab 1 at 53.)  Further, Plaintiff submitted evidence that Defendant Hinkle observed the injuries to Plaintiff's wrists and proceeded to reapply the handcuffs as tightly as he did before.  (Doc. 32-2, Ex. 1 ¶¶ 23-24.)

Moreover, Plaintiff submitted evidence that he returned to the Tyler Memorial Hospital the next day complaining about bilateral wrist pain with numbness of the right thumb and index finger.  (Doc. 32-3 at 1.)  Plaintiff also submitted evidence that he has received ongoing treatment for the complained of injury, including EMG nerve conduction, three nerve blocks, and imaging at the Wilkes Barre Imaging Center.  (Doc. 32-3 at 2.) Finally, Plaintiff submitted evidence from an expert stating, within a reasonable

8

degree of medical certainty, that Plaintiff's "current symptoms of numbness in his right thumb and index finger are secondary to the handcuff application," and "that his current low back pain is also secondary to the injury he sustained when falling to the ground." (Doc. 32-3 at 3.)

Resolving all factual disputes in favor of Plaintiff, it cannot be said that Defendant Hinkle's use of force was objectively reasonable under the circumstances.  Genuine issues of material fact exist as to whether Defendant Hinkle violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure through the use of excessive force.

### b.    Clearly Established

The Third Circuit Court of Appeals definitively stated in *Kopec* that the constitutional right at issue in this case is clearly established:

> "[W]e hold that the right of an arrestee to be free from the use of excessive force in the course of his handcuffing clearly was established . . . and that a reasonable officer would have known that employing excessive force in the course of handcuffing would violate the *Fourth Amendment*."

*Kopec*, 361 F.3d at 778.  Therefore, Defendant Hinkle is not entitled to qualified immunity from Plaintiff's section 1983 claim.  Defendants' motion for summary judgment will be denied with regard to this claim.

### 2.    *Monell* Liability

A government entity may not be held liable under § 1983 under the *respondeat superior* doctrine.  For a municipality or other government entity to be liable under § 1983, Plaintiff must establish: (1) a deprivation of a constitutionally protected right; (2)

9

resulting from a policy, practice, or custom.  *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691-94 (1978).  The municipality will be liable only if it was the "moving force" behind the constitutional violation, evidenced by a deliberate and direct causal link between a municipal policy or custom and the alleged constitutional violation. *Ehly v. City of Philadelphia*, No. 03-3634, 2004 U.S. Dist. LEXIS 23493, at *6 (E.D. Pa, Nov. 17, 2004).

A government's policy is established when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.  A course of conduct becomes a custom when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law.  It is Plaintiff's burden to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom.  *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).

Plaintiff argues that Defendant Hinkle, as Chief, was a policymaker, and therefore, the alleged unconstitutional actions of Defendant Hinkle during his encounter with Plaintiff may bind Exeter Township.  I disagree.  Evidence of an isolated incident is not sufficient to show the existence of custom or policy.  *See, e.g., Jones by & Through Jones v. Berwick Area Sch. Dist.*, No. 94-1818, 1995 U.S. Dist. LEXIS 21164, at *8 (M.D. Pa, March 13, 1995).  Isolated violations are not the persistent, often repeated, constant violations that constitute a custom or policy.  *Id.*  Plaintiff's evidence relates to only one particular instance, and as such, attaching liability to Exeter Township for Defendant Hinkle's alleged constitutional violations would be an impermissible application of the

*respondeat superior* doctrine.  Plaintiff has failed to submit evidence of a municipal policy or custom.  As such, Defendants' motion for summary judgment will be granted with regard to Plaintiff's claims against Exeter Township.

## 3.   State Law Claims

Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  I disagree.

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  Cases that "derive from a common nucleus of operative fact" with federal claims are part of the same case or controversy. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  Plaintiff's state law claims of battery and assault derive from the same operative facts as his remaining federal law claims, giving me jurisdiction under § 1367(a).

While I have supplemental jurisdiction, I also have discretion to decline to exercise that jurisdiction in certain circumstances.

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . .
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all

> claims over which it has original
> jurisdiction, or
> (4) in exceptional circumstances, there are
> other compelling reasons for declining
> jurisdiction.

28 U.S.C. § 1367(c).

In deciding whether to retain supplemental jurisdiction, a court "should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3d Cir.1993) (quoting *Gibbs*, 383 U.S. at 726).  In the present case, judicial economy dictates that the case should be decided in a single forum.  As such, I will not decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  Defendants' motion for summary judgment will be denied with respect to Plaintiff's state law claims.

## CONCLUSION

Defendants' motion will be granted in part and denied it in part.  Genuine issues of material fact exist as to whether Defendant Hinkle violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure through the use of excessive force.  As such, Defendant Hinkle is not entitled to qualified immunity from Plaintiff's section 1983 claims.  Moreover, Plaintiff has failed to submit evidence of a municipal policy or custom.  Therefore, Defendants' motion for summary judgment will be granted with regard to Plaintiff's claims against Exeter Township.  Furthermore, judicial economy dictates that the case should be decided in a single forum, and as such, I will not decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

12

An appropriate Order will follow.


 November 17, 2005                                    /s/ A. Richard Caputo
Date                                                 A. Richard Caputo
                                                     United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DOMINICK OCCHIATO,

    Plaintiff,

        v.

EXETER TOWNSHIP and JOHN
HINKLE,

    Defendants.

CIVIL ACTION NO. 3:04-CV-0499

(JUDGE CAPUTO)

## ORDER

**NOW**, this ___17th___ day of November, 2005, **IT IS HEREBY ORDERED** that Defendants' Motion For Summary Judgment (Doc. 21) is **GRANTED in part** and **DENIED in part**:

(1)    Defendants' motion is **GRANTED** insofar as it seeks summary judgment with respect to:

    (a)    All claims against Exeter Township.

(2)    Defendants' motion is **DENIED** with respect to:

    (a)    Qualified immunity from Plaintiff's Section 1983 claims against Defendant John Hinkle; and

    (b)    Plaintiff's state law claims.

        /s/ A. Richard Caputo
        A. Richard Caputo
        United States District Judge